FILED

2015 Jun-02  AM 08:47
U.S. DISTRICT COURT
N.D. OF ALABAMA

JWV/ASW: June 2015
GJ# 14

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
### SOUTHERN DIVISION

| | |
|---|---|
| **UNITED STATES OF AMERICA** | ) |
| | ) |
| **v.** | ) **Case No.** |
| | ) |
| **KIMBERLY H. BRANCH** | ) |

## INDICTMENT

The Grand Jury charges that:

At all times material to this Indictment:

### Introduction

1.     Serra Nissan is a car dealership, located at 1500 Center Point Parkway, Birmingham, Alabama 35215, in the Northern District of Alabama, that sells new and used cars.

2.     Serra Nissan is co-owned by Tony Serra, who owns fifty percent of the dealership, and his daughter, Kristina Serra Visser, who owns the other fifty percent.

3.     Serra Visser Nissan is a car dealership located at 1645 2nd Avenue NW, Cullman, Alabama 35055, in the Northern District of Alabama, that also sells new and used cars.

4.     Serra Visser Nissan has three co-owners: Tony Serra (who owns forty nine percent), Randy Visser (Tony Serra's son-in-law, who owns forty nine percent), and Kristina Serra Visser (Tony Serra's daughter, who owns two percent).

5.     Nissan Motor Company Ltd. is a Japanese multinational automobile manufacturer headquartered in Nishi-ku, Yokohama, Japan. Nissan North America, Inc. ("NNA"), was created to coordinate all of Nissan's various activities in North America and is headquartered in Franklin, Tennessee.

6.     NNA has many incentive programs it uses to reward dealerships who meet specified sales requirements. Often, each incentive is for a limited time period and has very specific requirements of which cars must be sold, and when.

7.     For example, the Dealer Volume Bonus was a 45-day program with general terms of volumes of cars to be sold. The time period for that incentive began on or around February 15, 2013, and ended on or about April 1, 2013. There was also a "fast start objective" incentive program that lasted from on or about February 15, 2013, until on or about February 28, 2013. If the dealer hit the specified sales targets during this period, they would receive an additional dollar amount per car sold.

8.     Each month, NNA sent dealers an incentive bulletin, roughly 36 pages long, that contains the rules for each incentive NNA has for the time period. The

bulletin is sent to all Nissan dealerships. At the end of the bulletin, the audit process is described.

9.      As one of the terms of its incentive program, NNA prohibited a process known as "pooling of sales." If a dealer owned or was associated with more than one dealership, it could not combine sales or attribute sales from one dealership to another in order to meet sales incentives. Dealers were required to retail delivery report ("RDR") cars accurately, meaning, the dealer had to report where the car was actually sold.

10.     At all times relevant, defendant **KIMBERLY H. BRANCH** was the Controller at Serra Nissan.

**COUNT ONE**
**Conspiracy**
**18 U.S.C. § 371**

**THE CONSPIRACY**

11.     The Grand Jury repeats and realleges the allegations contained in paragraphs 1 through 10 of this Indictment as though fully set out herein.

12.     From in or about March 2013 and continuing until in or about April 2013, the exact dates being unknown, in or around Jefferson County, within the Northern District of Alabama, and elsewhere, the defendant

**KIMBERLY H. BRANCH,**

did knowingly and willfully conspire, combine, and agree with other persons, known and unknown to the Grand Jury, to commit offenses against the United States, that is: to devise and intend to devise a scheme and artifice to defraud NNA, to obtain money and property belonging to NNA, by means of materially false and fraudulent pretenses, representations, and promises by use of interstate wire communications and transmissions, in violation of Title 18, United States Code, Section 1343.

## MANNER AND MEANS OF THE CONSPIRACY

13.    It was a part of the conspiracy that defendant **KIMBERLY H. BRANCH,** and others both known and unknown to the Grand Jury, conspired to report vehicle sales made at Serra Visser Nissan as having been sold at Serra Nissan, for Serra Nissan to qualify for incentives to which it was not entitled.

14.    It was a further part of the conspiracy that defendant **KIMBERLY H. BRANCH,** and others both known and unknown to the Grand Jury, falsified documents and created fake deal jackets to show that cars sold at Serra Visser Nissan had been sold at Serra Nissan, when, in fact, they had not.

15.    It was a further part of the conspiracy that defendant **KIMBERLY H. BRANCH**, and others both known and unknown to the Grand Jury, would falsify the information submitted to NNA, in the retail delivery report submitted for each

car sale, to show that vehicles were sold at Serra Nissan when, in fact, they had been sold at Serra Visser Nissan.

16.    It was a further part of the conspiracy that defendant **KIMBERLY H. BRANCH**, and others both known and unknown to the Grand Jury, created false documents to avoid detection in the event that NNA conducted an audit on any of the sales.

17.    It was a further part of the conspiracy that defendant **KIMBERLY H. BRANCH**, and others both known and unknown to the Grand Jury, pooled sales between Serra Visser Nissan and Serra Nissan so that both dealerships would qualify for incentive payments from NNA, when, in fact, Serra Nissan did not qualify without the falsely reported sales.

## OVERT ACTS

18.    In furtherance of the conspiracy and to achieve the objects thereof, defendant **KIMBERLY H. BRANCH**, and others both known and unknown to the Grand Jury, committed and caused to be committed the following overt acts, among others, in the Northern District of Alabama and elsewhere:

19.    In or around March 2013, **KIMBERLY H. BRANCH** brought the deal jackets for fifteen vehicle sales transactions, sold at Serra Visser Nissan, to J.G., a finance manager at Serra Nissan, for J.G. to create fake deal jackets

showing the cars had been sold at Serra Nissan when, in fact, the cars had been sold at Serra Visser Nissan.

20.    At the request of **KIMBERLY H. BRANCH**, J.G. created false, duplicate deal jackets to make it look like the fifteen vehicles had been sold at Serra Nissan instead of Serra Visser Nissan.

21.    On or around June 1, 2013, R.V., General Manager of Serra Nissan, emailed **KIMBERLY H. BRANCH** and F.H., to confirm whether the accounting was done properly when they logged the Serra Visser Nissan deals as having been sold at Serra Nissan.

22.    On or around June 3, 2013, **KIMBERLY H. BRANCH** responded to R.V. and F.H., confirming that while she did not put the deals in accounting, she had a list of the fifteen deals so she could add the sales to any report. She also explained in the email that she had J.G. create fake Serra Nissan deal jackets in the event that NNA ever requested the deals be pulled.

All in violation of Title 18, United States Code, Section 371.

## COUNTS TWO through SIXTEEN
### Wire Fraud
### 18 U.S.C. §§ 1343, 1349, and 2

23.    The Grand Jury repeats and realleges the allegations contained in paragraphs 1 through 10 of this Indictment as though fully set out herein.

24.    On or about March 31, 2013, more exact dates being unable to be determined by the Grand Jury, the defendant, **KIMBERLY H. BRANCH**, together with others both known and unknown to the Grand Jury, did knowingly and with the intent to defraud, devise and intend to devise a scheme and artifice to defraud NNA, and to obtain money and property by means of materially false and fraudulent pretenses, representations and promises.

25.    It was part of the scheme and artifice that the defendant, **KIMBERLY H. BRANCH**, together with others both known and unknown to the Grand Jury, with the intent to defraud, engaged in the conduct set forth in paragraphs 13 through 17 of this Indictment, which the Grand Jury repeats and realleges as though fully set out herein.

26.    On or about the dates set forth below, each such date constituting a separate count of this Indictment, in Jefferson County within the Northern District of Alabama, and elsewhere, the defendant, **KIMBERLY H. BRANCH**, together with others both known and unknown to the Grand Jury, for the purpose of executing the above-described scheme and artifice and attempting to do so, did transmit and caused to be transmitted in interstate commerce, by means of a wire communication, certain signs, signals and communications, that is, defendant and others caused an interstate communication between Serra Nissan, in Alabama, and NNA, in Tennessee, to be made on each occasion listed below, in which Serra

Nissan submitted an electronic retail delivery report to NNA, providing information regarding the sale of a vehicle, in order to obtain incentive funds to which Serra Nissan was not entitled.

27.    The allegations of paragraphs 23 through 26 are repeated and realleged in Counts Two through Sixteen, below, as though fully set forth therein for each count:

| Count | Retail Delivery Report (Date Transmitted) | Vehicle Identification Number (last six digits) |
|---|---|---|
| 2 | 3/31/2013 | -305567 |
| 3 | 3/31/2013 | -219240 |
| 4 | 3/31/2013 | -107949 |
| 5 | 3/31/2013 | -890957 |
| 6 | 3/31/2013 | -019010 |
| 7 | 3/31/2013 | -883487 |
| 8 | 3/31/2013 | -427960 |
| 9 | 3/31/2013 | -660862 |
| 10 | 3/31/2013 | -510418 |
| 11 | 3/31/2013 | -692660 |
| 12 | 3/31/2013 | -684907 |
| 13 | 3/31/2013 | -688338 |
| 14 | 3/31/2013 | -477486 |
| 15 | 3/31/2013 | -021337 |
| 16 | 3/31/2013 | -060173 |

All in violation of Title 18, United States Code, Sections 1343, 1349, and 2.

## NOTICE OF FORFEITURE
### [18 U.S.C. §§ 981(a)(1)(C), 982(a)(2)(A), and 28 U.S.C. § 2461(c)]

28.    The allegations of Counts One through Sixteen of this Indictment are realleged and incorporated by reference as though set forth fully herein for the purpose of alleging forfeiture to the United States pursuant to the provision of Title 18, United States Code, Sections 981(a)(1)(C) and 982(a)(2)(A), and Title 28, United States Code, Section 2461(c).

29.    Pursuant to Federal Rule of Criminal Procedure 32.2(a), the defendant is hereby notified that upon conviction of Counts One through Sixteen of this Indictment, the defendant **KIMBERLY H. BRANCH** shall forfeit to the United States any property, real or personal, which constitutes or is derived from, directly or indirectly, proceeds traceable to the commission of said violations, including, but not limited to, a money judgment in the amount of $82,750.00 in United States currency, representing the amount of proceeds obtained as a result of the offenses alleged.

30.    If any of the above-described forfeitable property, as a result of any act or omission of the defendant:

a.    cannot be located upon the exercise of due diligence;

b.    has been transferred or sold to, or deposited with, a third party;

c.    has been placed beyond the jurisdiction of the court;

d.    has been substantially diminished in value; or

e.     has been commingled with other property which cannot be divided without difficulty;

it is the intent of the United States, pursuant to 21 U.S.C. § 853(p), to seek forfeiture of any property of said Defendant up to the value of the forfeitable property described above.

All in accordance with Title 18, United States Code, Sections 981(a)(1)(C) and 982(a)(2)(A), and Title 28, United States Code, Section 2461(c).

A TRUE BILL

/s/
FOREMAN OF THE GRAND JURY


JOYCE WHITE VANCE
United States Attorney


*/s/*
AMANDA WICK
Assistant United States Attorney


/s/
JENNIFER S. MURNAHAN
Assistant United States Attorney